NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| SAMANTHA MARTINEZ, | : | Civil Action No. 21-11111-KM-AME |
| Plaintiff, | : | OPINION and ORDER |
| v. | : | |
| CITY OF UNION CITY, et al., | : | |
| Defendants. | : | |

**ESPINOSA**, Magistrate Judge

This matter comes before the Court on the motion by Plaintiff Samantha Martinez ("Plaintiff") for leave to file an amended complaint, pursuant to Federal Rule of Civil Procedure 15(a), to add factual allegations in further support of her existing employment discrimination claims under Title VII of the Civil Rights Act ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. § 10:5-21 *et seq*. [ECF 66 and 67].[1] Defendants City of Union City and Lieutenant Matulewicz (collectively "Defendants") oppose the motion. The Court has considered the written submissions and, in its discretion, rules without oral argument. *See* Fed. R. Civ. P. 78. For the following reasons, the motion is granted.

---

[1] The motion papers were filed in two separate docket entries, 66 and 67, but together they form one single motion for leave to amend the complaint.

I.   **BACKGROUND**

A.   **Factual Background**

This action arises out of the harassment and retaliation Plaintiff alleges she experienced during her employment with defendant City of Union City ("Union City"). The following factual summary is drawn from the Amended Complaint, and its allegations are taken as true for purposes of this motion only.

Plaintiff, a Hispanic woman, has been employed as a Patrolman in the Union City Police Department's Emergency Services Unit ("ESU") since June 3, 2013. (Am. Compl. ¶ 19.) At the time this action was initiated, Plaintiff was the only female ESU officer in the Union City Police Department. (*Id.* ¶ 19.) The incidents giving rise to Plaintiff's allegations did not commence until she was assigned, in or about December 2018, to a 7:00 p.m. to 3:00 a.m. tour, known as the "powershift." (*Id.* ¶ 21.) Though he was not Plaintiff's direct superior in the chain of command, defendant Lieutenant Matulewicz ("Matulewicz") also worked during the powershift in the position of Desk Supervisor. (*Id.* ¶¶ 21-23.) Plaintiff alleges Matulewicz "began a campaign of discrimination, harassment, and creating/sustaining a hostile work environment." (*Id.* ¶ 23.) That ongoing harassment campaign is the foundation of Plaintiff's claims.

Plaintiff alleges that Matulewicz made various sexual and otherwise inappropriate comments about her, directed to her and also shared with other employees in the Police Department, regarding Plaintiff's interactions with her supervisor, Lieutenant DeRojas, and with her colleague Officer Aviles. (*Id.* ¶¶ 24-32.) Among other things, Matulewicz accused Plaintiff of engaging in an intimate relationship with Officer Aviles, using explicit language when

2

describing that relationship. (*Id.*) Plaintiff alleges those comments caused her anxiety and humiliation. (*Id*. ¶ 30.)

The earliest of these remarks, alleged in the Amended Complaint, was made on February 29, 2020. (*Id.* ¶ 24.) Additionally, Plaintiff alleges Matulewicz routinely disparaged her position in the ESU, insinuated Plaintiff was not qualified for her job, refused to assign Plaintiff to ride on the ESU truck, and sent her out on "report only" calls, contrary to department orders for officer safety during the Covid-19 pandemic. (*Id.* ¶¶ 33-40.) Plaintiff further alleges Matulewicz, either directly or through others in his chain of command, singled her out for harsh treatment, including failing to provide her assistance in the field, even when she expressly requested it; scrutinizing her performance for infractions; and reprimanding her for conduct that she states was standard or typical, such as remaining in her uniform after her shift. (*Id.* ¶¶ 41-46.)

Plaintiff alleges that on June 25, 2020, she informed her superior, Captain Botti, "that Lt. Matulewicz had been sexually harassing her, discriminating against her, and creating a hostile work environment, since February 2020." (*Id.* ¶ 48). Although Plaintiff was thereafter interviewed by Internal Affairs about her complaints against Matulewicz (*id.* ¶ 51), she asserts that she continued to be sexually harassed, intimidated, and otherwise treated with hostility, in retaliation for reporting Matulewicz's misconduct. (*Id.* ¶¶ 52-125.) The Amended Complaint details numerous incidents in which various members of the Union City Police Department engaged in such allegedly unlawful behavior targeting Plaintiff throughout 2020 and 2021.

The latest incident set forth in the Amended Complaint occurred April 13, 2021, when Plaintiff's application to enroll in the Fraternal Order of Police was refused because "she is a rat . . . [who] wants to go after supervisors and file complaints against them." (*Id.* ¶ 124.) Plaintiff

3

alleges that despite her "continued complaints to supervisors in the Union City Police Department, the Police Chief of the Union City Police Department, and Internal Affairs, and despite the Union City Police Department's knowledge of the harassment, the hostile conduct continued without abatement." (*Id.* ¶ 126.)

### B. Procedural History

Plaintiff filed this action on May 12, 2021. The original Complaint named Union City, the Union City Police Department, and Matulewicz as defendants and sought relief under both Title VII and the NJLAD for the following alleged violations: sexual harassment and hostile work environment (Count I); gender discrimination (Count II); and retaliation (Count III). On November 8, 2021, the District Court granted, in part, Defendants' motion under Federal Rule of Civil Procedure 12(b)(6) to dismiss Plaintiff's Complaint. The Court dismissed Plaintiff's gender discrimination claims in their entirety, holding that Plaintiff failed to plead a *prima facie* case of such discrimination because she did not allege an adverse employment action, such as termination or demotion, as required by both Title VII and the NJLAD. (*See* November 8, 2021 Op. at 13-14 and 18.) The Court also dismissed all Title VII claims against Matulewicz, concluding the statute prohibits employers from engaging in unlawful practices but does not apply to individual employees, even those in a supervisory role. (*See id.* at 18.) Plaintiff's Title VII and NJLAD claims against Union City for hostile work environment and retaliation, and her NJLAD claims against Matulewicz for hostile work environment and retaliation, survived Defendants' motion to dismiss.[2]

---

[2] In its disposition of the Rule 12(b)(6) motion, the District Court also directed that the Union City Police Department be terminated as a named party, as it is not an independent entity, distinct from the municipality. (*See* Nov. 8, 2021 Op. at 7 n.4.)

4

On May 26, 2022, by agreement of the parties, Plaintiff filed an Amended Complaint, to correct the original pleading's failure to include a claim for unliquidated damages. The Amended Complaint reasserts Plaintiff's surviving claims under Title VII and the NJLAD based on the same factual allegations first set forth in the Complaint, that is, incidents of alleged harassment and/or retaliation spanning from February 29, 2020 to April 13, 2021.[3]

The parties began discovery upon entry of this Court's Pretrial Scheduling Order on February 8, 2022, which set a fact discovery deadline of October 31, 2022, and an April 20, 2022 deadline for filing motions to amend the pleadings. The fact discovery period has been extended several times and is currently set to close on November 2, 2023, by which date all fact witness depositions must be complete.

During Plaintiff's July 20, 2023 deposition, the issue prompting this motion to amend surfaced. There, Plaintiff testified about incidents of alleged harassment, beyond those identified in the Amended Complaint, specifically at least one event before February 20, 2021, and two events after the filing of this action. That testimony led to disagreement among the parties concerning the scope of this lawsuit, which they raised to the Court in a July 31, 2023 joint dispute letter. In relevant part, the parties sought the Court's intervention to resolve the question of whether the additional incidents referenced in Plaintiff's deposition relate to her employment discrimination claims against Union City and Matulewicz, as Plaintiff argued, or whether they fall outside the scope of this lawsuit, as Defendants contend.

---

[3] The Amended Complaint also repeats the original pleading's now-dismissed claims for gender discrimination and the Title VII claims against Matulewicz. However, these claims are not deemed revived simply because of Plaintiff's apparently mistaken inclusion of them in the Amended Complaint, which is inconsistent with the District Court's November 8, 2021 Order.

5

The Court addressed this issue, among others raised in the dispute letter, in a conference held on the record on August 1, 2023. Plaintiff argued that the incidents were relevant and asserted they had been disclosed to Defendants in her written discovery. Defendants countered that such discovery, written or at deposition, was outside the bounds of this action, arguing Plaintiff may not rely on incidents not expressly alleged as predicates for Defendants' alleged liability under Title VII and/or the NJLAD. During the conference, Plaintiff requested permission to file a motion to amend, to add factual allegations in support of her employment discrimination claims. The Court granted leave, instructing her to file the motion no later than August 23, 2023.

### C. Proposed Second Amended Complaint's New Allegations

Now, upon this motion for leave to amend, Plaintiff seeks to add factual allegations concerning two further incidents of alleged harassment and/or retaliation, which occurred shortly after this action was initiated.[4] Over thirteen numbered paragraphs in the proposed Second Amended Complaint, Plaintiff describes the alleged incidents as follows:

On May 21, 2021, Plaintiff was assigned to a work detail in the area of 30th Street and Bergenline Avenue. (Second Am. Compl. ¶ 126.) When she arrived, she "immediately requested via dispatch, for another officer to come to the detail," to assist her with an uncooperative male suspect she sensed might become aggressive. (*Id.* ¶ 126.) Another officer then called Plaintiff "to notify her that her request was 'not important.'" (*Id.* ¶ 127.) Plaintiff alleges she "feared for her safety on the scene with no back up." (*Id.* ¶ 128.) Two officers eventually arrived "after an

---

[4] Plaintiff previously expressed interest in adding allegations concerning pre-February 2020 incidents and in naming Mayor Stack as a defendant. However, she does not include such requests in this motion for leave to amend, an omission this Court construes as an affirmative waiver, given the age of this litigation.

6

unreasonable amount of time," according to the proposed Second Amended Complaint. (*Id.* ¶ 129.) Plaintiff alleges she not only informed one of those officers, on scene, that the Department's failure to provide backup was contrary to their training but, afterwards reported her safety concerns to Sergeant Gonzalez at police headquarters, and submitted a written report concerning the incident to Chief Luster. (*Id.* ¶ 130.) However, "these concerns were not addressed by the department."[5] (*Id.*) The Second Amended Complaint adds that, near the time of this incident, the media published articles concerning this lawsuit, initiated days earlier, and the spread of the news through the department caused Plaintiff to continue to fear for her safety. (*Id.* ¶ 131.)

On June 1, 2021, Plaintiff was assigned a detail in the area of 12th to 13th Streets and New York Avenue for a block party. (*Id.* ¶ 132.) While on that assignment, Plaintiff observed Union City Mayor Brian Stack drive through the site slowly, disregarding the street closures. (*Id.* ¶ 133.) Shortly after his drive through the block party site, "Mayor Stack transmitted a message over the police radio to every patrolman/supervisor or anyone else who was in possession of police radios." (*Id.* ¶ 134.) In a tone Plaintiff alleges was "irritable," Mayor Stack directed officers working that event to stay off their cell phones while working. (*Id.*) Later, Sergeant Vega confronted Plaintiff and requested she submit a written report, claiming Mayor Stack stated she had been on her cell phone. (*Id.* ¶ 135.) Plaintiff advised Sergeant Vega she had not been on her phone but, rather, was talking with a resident while holding a water bottle. (*Id.* ¶ 136.) Plaintiff

---

[5] The Court will hereinafter refer to these allegations as the "Backup Incident."

alleges Mayor Stack intended to intimidate her in retaliation for pursuing this lawsuit. (*Id.* ¶ 137.) Plaintiff reported this incident to Internal Affairs but suggests the report was met with silence, causing her to feel further intimidated from reporting unjust behavior against her.[6] (*Id.* ¶¶ 138-139.)

## II. DISCUSSION

### A. Legal Standards

Motions for leave to amend pleadings are governed by the liberal standard of Rule 15(a)(2), which provides that "[t]he court should freely give leave [to amend a pleading] when justice so requires." Fed. R. Civ. P. 15(a)(2). However, when a motion to amend or add a party is filed after the deadline set by court order, the movant must first meet the heightened requirement imposed by Federal Rule of Civil Procedure 16(b)(4), before the Court considers whether leave to amend is warranted under Rule 15(a). *Premier Comp. Solutions, LLC v. UPMC*, 970 F.3d 316, 319 (3d Cir. 2020). Under Rule 16(b)(4), a party must demonstrate "good cause" to modify the Court's scheduling order, meaning she has acted with reasonable diligence despite the failure to comply with the order. *See* Fed. R. Civ. P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent."); *Race Tires Am., Inc. v. Hoosier Racing Tire Corp.*, 614 F.3d 57, 84 (3d Cir. 2010) ("Rule 16(b)(4) focuses on the moving party's burden to show due diligence.").

Here, the Court set a deadline of April 20, 2022 for filing "any motion to amend pleadings." (Feb. 8, 2023 Pretrial Scheduling Order, ¶ 3.) Although fact discovery was extended numerous times, at the parties' request, the deadline for filing motions to amend was not. During

---

[6] The Court refers herein to these allegations as the "Cellphone Incident."

8

the August 1, 2023 status conference, the Court gave Plaintiff leave to file this motion but expressly warned that, because it would be presented to the Court after the Pretrial Scheduling Order's deadline, the motion would be subject not only to Rule 15(a)(2) but also to the more stringent standard of Rule 16(b)(4).

### B. Good Cause under Rule 16(b)(4)

Because good cause to bring a late motion to amend turns on the movant's diligence, the Court considers whether Plaintiff "possessed, or through the exercise of reasonable diligence, should have possessed, the knowledge necessary to file the motion to amend before the deadline expired." *Fermin v. Toyota Material Handling, U.S.A., Inc.*, Civil No. 10-3755, 2012 WL 1393074, at *3 (D.N.J. Apr. 23, 2012). Here, whether Plaintiff exercised sufficient diligence to meet the standard in Rule 16(b)(4) is a close call. Nevertheless, for following reasons, the Court finds, by the barest margin, sufficient good cause to satisfy Rule 16(b)(4).

The proposed amendments to the pleadings in this employment discrimination action concern two additional incidents of alleged workplace misconduct that occurred in 2021, shortly after this lawsuit was filed. On one hand, the factual allegations concerning the Backup Incident and the Cellphone Incident have been known to Plaintiff since 2021, when they occurred. They could have been added through a Rule 15 motion, or even by consent of the parties, at any time in the roughly ten months between those events and the April 2022 deadline for amending pleadings.

On the other hand, as soon as Plaintiff realized the omission of the allegations from the Amended Complaint, she sought relief from the Court. She identified the alleged misconduct involved in the Backup Incident and the Cellphone Incident during her deposition testimony on

9

July 20, 2023, when it became apparent that these incidents had not been included in the Amended Complaint as acts on which her harassment and retaliations claims are based. The dispute that ensued, concerning the scope of the action and, relatedly, appropriate discovery, was brought to the Court's attention within days of the deposition. Upon realizing the Backup Incident and the Cellphone Incident were outside the scope of the action as defined by the Amended Complaint, Plaintiff requested leave to amend her pleading during the August 1, 2023 status conference.

In light of that relatively prompt action, and the Third Circuit's expressed preference "that cases be disposed of on the merits whenever practicable," *Hritz v. Woma Corp.*, 732 F.2d 1178, 1181 (3d Cir. 2004), the Court will exercise its discretion, in this instance, to relax the deadline for filing motions to amend. However, the Court observes that the discrepancy between the factual allegations in the Amended Complaint and Plaintiff's understanding of the scope of alleged misconduct underlying her claims could have come to light earlier in this action through careful investigation and diligent attention to detail. In only modestly different circumstances, such oversights and lapses of diligence might result in an adverse ruling. Nevertheless, on the facts here, and in the interest of reaching the merits of Plaintiff's motion to amend her claims, the Court excuses any untimeliness and will consider the motion under Rule 15.

### C. Leave to Amend under Rule 15(a)(2)

Rule 15(a)(2) requires that leave to amend be "freely given." *Foman v. Davis*, 371 U.S. 178, 182 (1962). Nevertheless, courts retain discretion to deny leave for various equitable reasons including "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing

party by virtue of allowance of the amendment, [and/or] futility of amendment…." *Id.*, 371 U.S. at 182; *see also Arthur v. Maersk, Inc.*, 434 F.3d 196, 204 (3d Cir. 2006) (citing *Foman*). Here, Defendants argue that leave to amend must be denied on grounds of undue delay, prejudice, and futility. The Court considers each in turn.

Undue delay, as a basis for denying a motion for leave to amend, focuses on whether the party seeking leave has inexplicably failed to take advantage of previous opportunities to amend, resulting in unfair burdens to the court and the opposing party. *Arthur*, 434 F.3d at 204. "The mere passage of time does not require that a motion to amend a complaint be denied on grounds of delay." *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001). As noted earlier, although Plaintiff possessed knowledge of the facts underlying her proposed amendments for over a year before she filed this motion, it appears from the record that she and her counsel were operating under the mistaken belief that the Backup Incident and the Cellphone Incident were encompassed within her Title VII and NJLAD claims, as pled. Plaintiff asserts in her motion that she disclosed the incidents in her document production (Pl. Br. at 16), and it also appears she identified them, albeit imprecisely, in her responses to Union City's interrogatories. (*See* Calviello Decl. Ex. A, at 8.) While Plaintiff could have moved to add these allegations earlier, her request to amend now will not result in unfair burdens to the Court's schedule or to Defendants, particularly as the amendment's scope is limited, discovery remains incomplete, and this action is not close to being ready for trial.

Moreover, the proposed amendment will not unduly prejudice Defendants. In the context of a motion to amend under Rule 15, undue prejudice focuses on whether the non-moving party will face hardship if amendment is permitted. *Cureton*, 252 F.3d at 273. Examples of undue

prejudice include situations where the proposed amendment to the pleadings will "require the opponent to expend significant additional resources to conduct discovery and prepare for trial" or will "significantly delay the resolution of the dispute." *Long v. Wilson*, 393 F.3d 390, 400 (3d Cir. 2004). Those conditions are not present here.

In arguing they will be unduly prejudiced by the proposed amendment, Defendants maintain that Plaintiff's new factual allegations constitute additional bases for her Title VII and NJLAD claims and, as such, expand their exposure to liability and require Defendants to expend substantial time and resources to properly defend against them. However, the proposed additional allegations are few and concern only two specific instances of the same overall "campaign of harassment" to which Plaintiff alleges she was subjected during her employment by the Union City Police Department. The incidents are not only substantively related to the crux of this action—specifically, the retaliation Plaintiff alleges she experienced as a result of her workplace misconduct complaints—but also occurred close in time to the various other incidents sequentially set forth in the original Complaint and the Amended Complaint. While some additional discovery will likely be required to explore these allegations, the Court cannot conclude that such discovery will so expand the scope of this action as to unduly prejudice Defendants.

Finally, futility does not constitute a basis for denying Plaintiff's motion to amend. Futility, in the context of assessing a Rule 15 motion, "means that the complaint, as amended, would fail to state a claim upon which relief could be granted." *In re Burlington Coat Factory*

*Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997); *see also In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1332 (3d Cir. 2002) (holding same). "In assessing futility, the district court applies the same standard of legal sufficiency as applies under Rule 12(b)(6)." *Burlington*, 114 F.3d at 1434; *see also Massarsky v. General Motors Corp.*, 706 F.2d 111, 125 (3d Cir.), *cert. denied*, 464 U.S. 937 (1983) (holding that a motion for leave to amend may be denied on grounds of futility when the amendment would not withstand a Rule 12(b)(6) motion to dismiss). The District Court has already screened Plaintiff's employment discrimination action upon a Rule 12(b)(6) motion. The proposed Second Amended Complaint neither adds new legal claims nor expands her existing claims with a factual predicate substantially dissimilar from the allegations found by the District Court to plead *prima facie* claims for relief under Title VII and the NJLAD.[7] Although Defendants argue that the thirteen factual allegations Plaintiff seeks to add cannot establish plausible claims under those statutes, this Court cannot take so narrow a view of the proposed amendment. Taking the allegations as true, the two additional incidents constitute further acts of an ongoing campaign of harassment and retaliation against Plaintiff by Union City, through its employees. They must be considered in the context of the Complaint as a whole. As such, consistent with the District Court's evaluation of the sufficiency of the original Complaint, the proposed allegations concerning the Backup Incident and the Cellphone Incident must similarly survive a futility challenge.

---

[7] However, the proposed amended pleading attached to the Certification of Counsel Helene C. Herbert as Exhibit C contains the same superfluous material as the Amended Complaint concerning previously dismissed claims. (*See* n.3, *supra.*) Before filing, counsel shall correct the Second Amended Complaint to reflect the rulings made by the District Court's November 8, 2021 Opinion and Order, as set forth therein and described above.

This Court does not express a view on the strength of Plaintiff's new factual allegations. Moreover, adding these facts now, when they have been known to Plaintiff since the earliest stages of this lawsuit, stretches the liberal standard of Rule 15(a) to its outer boundary. Still, in considering a motion for leave to amend, the Court must be guided by the Third Circuit's consistent recognition "that prejudice to the non-moving party is the 'touchstone for the denial of an amendment.'" *Arthur*, 434 F.3d at 204 (quoting *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1414 (3d Cir. 1993)). Given the limited nature of Plaintiff's proposed amendment, the lack of undue prejudice to Defendants, and Rule 15's directive that leave to amend be freely given, the Court is satisfied that Plaintiff has met the standard for filing her proposed Second Amended Complaint.

### III. CONCLUSION AND ORDER

For the foregoing reasons, this Court finds, in its discretion, that the relief sought in this motion to amend is warranted under Rules 15(a)(2) and Rule 16(b)(4). Accordingly,

**IT IS** on this 26th day of October 2023,

**ORDERED** that plaintiff's motion for leave to file an amended complaint [ECF 66 and 67] is **GRANTED**; and it is further

**ORDERED** that plaintiff shall revise the proposed Second Amended Complaint consistent with notes 3 and 7 of the foregoing Opinion and file the pleading within seven days of this Order; and it is further

**ORDERED** that the Court will hold a telephonic status conference on **November 15, 2023, at 10:00 a.m.**, to be joined by dialing 866-434-5269, access code 1874589. No later than November 10, 2023, the parties shall file a joint status letter, not to exceed three pages double-

14

spaced. The letter shall identify any additional fact discovery required due to the new factual allegations permitted by this Order granting leave to amend. In conferring to create their joint proposal, the parties shall bear in mind that the Court will allow only limited discovery, consistent with the limited number and nature of the new allegations.

                                                                                                               /s/ *André M. Espinosa*
                                                                                                              ANDRÉ M. ESPINOSA
                                                                                                              United States Magistrate Judge